**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

EMILY GLASPIE, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

NATIONAL ASSOCIATION OF BOARDS
OF PHARMACY,

    Defendant.
_____/

Case No.: 1:22-cv-06497

Honorable Virginia M. Kendall

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Plaintiff Emily Glaspie ("Plaintiff" or "Glaspie"), on behalf of herself and all others similarly situated, by and through the undersigned counsel of record, respectfully requests that the Court enter an Order granting final approval of the Class Action Settlement Agreement ("Settlement Agreement"), filed with the Court on October 10, 2023 (D.E. 35-1), and preliminarily approved by the Court by Order dated October 11, 2023 (D.E. 37). In support thereof, Glaspie states as follows:

## BACKGROUND

### A. The Alleged Underlying Dispute

As alleged by Plaintiff in her Complaint (D.E. 1), this is a putative class action lawsuit arising out of almost unthinkable facts. The NABP administers various licensing exams for aspiring pharmacists, including the North American Pharmacist Licensure Examination (the "NAPLEX")—roughly equivalent to the bar examination for pharmacy students. (D.E. 1 ¶ 23.) By the time that test takers take the NAPLEX, most have already taken the requisite ethics exam (the Multistate Pharmacy Jurisprudence Examination ["MPJE"]) and secured coveted jobs and residencies contingent upon passing the NAPLEX. (D.E. 1 ¶¶ 19–20.) Without passing the NAPLEX, candidates cannot become licensed pharmacists and, thus, cannot obtain employment as a practicing pharmacist. (D.E. 1 ¶ 32.)

Further, Plaintiff alleged in her Complaint that the NABP represents that, in exchange for the registration fee of several hundred dollars, the NABP properly administers, scores, and reports the scores of the NAPLEX exam. (D.E. 1 ¶¶ 22, 25, 41.) While the NABP did administer the exam, the NABP did not, in 2021 and 2022, properly score and/or report the scores of the NAPLEX for hundreds of test takers. (D.E. 1 ¶¶ 5, 43.) Instead, in 2021, the NABP advised nearly 410 test takers that those test takers had failed the NAPLEX when, in fact, those test takers had *passed the*

*examination*. (D.E. 1 ¶ 51; D.E. 1 Exh. C.) Then, in 2022, despite having actual knowledge of its scoring problems in 2021, the NABP advised another 220 test takers that they had failed the NAPLEX when, in fact, those test takers had passed. (D.E. 1 ¶ 57; D.E. 1 Exh. D.) Plaintiff Dr. Emily Glaspie was one such test taker. (D.E. 1 ¶ 67.) Despite her hard work and passing score, the NABP reported to Glaspie that she had failed the NAPLEX. (D.E. 1 ¶ 63.) Glaspie's incorrect score—as well as the scores of the Settlement Class—was—were—then reported to various pharmacy boards across the country. (D.E. 1 ¶ 71.) These candidates lost jobs and internships from the incorrectly reported false failing score, costing the Class Members up to thousands in lost salary and other damages. (D.E. 1 ¶¶ 6, 39, 72–74.)

### B. Litigating the Action

As a direct result of the NABP's actions, Glaspie, on behalf of herself and others similarly situated, filed the operative Class Action Complaint against the NABP on November 19, 2022 (the "Complaint"). (D.E. 1.) The Complaint contains causes of action for breach of contract, negligence, negligent misrepresentation, defamation *per se*, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

On February 1, 2023, the NABP filed a Partial Motion to Dismiss, requesting dismissal with prejudice of all claims but the breach of contract claim. (D.E. 15, 16.) After mutual discussions between counsel, the Parties agreed to stay briefing on the Partial Motion to Dismiss in favor of an early mediation.

### C. The Settlement Negotiations

The mediation took place on February 28, 2023, before respected mediator Harry Schafer. After a contentious full-day mediation, the Parties reached a resolution, reducing that resolution to a binding settlement term sheet. Thereafter, the NABP identified additional members of the

Settlement Class and/or otherwise identified that members of the Settlement Class should be moved within the tiers of the proposed monetary relief. Thus, the Parties executed an Amended Settlement Term Sheet on April 4, 2023. Finally, on July 13, 2023, the Parties executed the Settlement Agreement.

### D. Preliminary Approval

The Court preliminarily approved the Settlement on October 11, 2023. (D.E. 37.) The Court found that the Settlement Agreement was sufficiently fair and reasonable to warrant notice to the Settlement Class and setting a Final Approval Hearing. (D.E. 37 ¶¶ 1, 6, 8.) The Court also ordered the Notice Program be implemented, approved the Settlement Claim Form, prescribed the objector and Opt-Out requirements, and set dates for the Final Approval Hearing and submissions and Class Counsel's application for attorneys' fees.[1] (D.E. 37 ¶¶ 8, 10–21).

### E. Administrator

The Court's Preliminary Approval Order (D.E. 37) allowed the Parties to choose a class action settlement administrator to administer the Settlement Agreement and implement the Notice Program. The Parties agreed to use Angeion Group, LLC ("Angeion"), a nationally recognized class action settlement administrator.

To support this Motion, Plaintiffs submit the declaration of Ryan Williams re: Notice and Administration Proof of Completion (the "Angeion Declaration"). A true and correct copy of the Angeion Declaration is attached hereto as **Exhibit 1**. The Angeion Declaration provides information about the delivery and completion of the Court's approved Notice Program and responses from Settlement Class Members.

---

[1] Class Counsel's request for attorneys' fees and class representative award and supporting material were timely filed separately pursuant to the Court's Preliminary Approval Order. (D.E. 43.)

F.  **CAFA Notice**

On October 20, 2023, Angeion compiled and timely delivered the required Class Action Fairness Act ("CAFA") notification materials required by 28 U.S.C. § 1715 to the U.S. Attorney General and the Attorneys General of all states and territories. (D.E. 39.) Exh. 1 ¶ 4.

G.  **Notice Program**

Angeion implemented the Notice Program under the Settlement Agreement as ordered by the Court. Angeion mailed two Notices (two mailings to Settlement Class Members) and emailed two Notices (two emails to Settlement Class Members) of the Notices in the form approved by the Court (the "Notice Package"). A copy of the Notice Package that was sent to potential Settlement Class Members is attached as Composite Exhibits B and C to the Angeion Declaration. The NABP also emailed two notices to Settlement Class Members. A true and correct copy of the declaration of Kathleen Jensen regarding email notice by the NABP is attached hereto as **Exhibit 2.** In short, each Settlement Class Member was sent four email notices and two first-class mail notices. Appropriate steps were being taken to re-send notices that were returned undeliverable. Exh. 1 ¶ 12.

Angeion further established a Settlement website, www.PharmacyExamSettlement.com ("Settlement Website"), where Settlement Class Members could go to review pertinent documents relating to the Settlement and submit claims electronically. Exh. 1 ¶ 13. The home page contains a summary of the Class Notice and Important Dates. It also provides links to Frequently Asked Questions, Important Documents (including, but not limited to, the Preliminary Approval Order, Settlement Agreement, Class Counsel's Motion for Attorney's Fees), the electronic Claim Form submission page, and the toll-free number and address for contacting Angeion. The Settlement

Website will remain in service, and has been updated as necessary, through the end of settlement administration, which is ongoing. *Id.*

Angeion provided its mailing address to receive correspondence from Settlement Class Members concerning the proposed Settlement, including Opt-Out exclusion requests and paper Claim Forms. Angeion will continue to receive Settlement Class Member correspondence and respond as appropriate through final administration of the Settlement. And, Angeion established and maintained a toll-free telephone system containing recorded answers to frequently asked questions and options to speak to representatives directly. Exh. 1 ¶ 14. This telephone number was provided to Settlement Class Members in the Class Notice and is identified on the Settlement Website. *Id.* The deadline to submit claim forms was January 12, 2024.

**H. Opt-Out Requests**

The deadline to opt out of the Settlement was on December 13, 2023. As of the date of this Motion, the Parties have received three attempts to be excluded from the Class, but only two of these opt-out requests are valid on their face.[2] Exh. 1 ¶ 16.

**I. Objections and Notices of Intent to Appear at Final Approval Hearing**

The deadline to submit an objection to the Settlement was on December 13, 2023. As of the date of this Motion, the Parties have received one attempt to object to the Settlement. Exh. 1 ¶ 17. However, on its face, this objection is invalid.[3]

---

[2] Contemporaneous with this Motion for Final Approval, NABP will be filing its Motion for Determination on Attempted Opt Out by Dr. Kathryn Ann Harison, and Other Relief (the "Harison Motion"), seeking the Court's determination of whether the attempted opt out of Dr. Kathryn Ann Harison was valid, as it was signed by *counsel* for Dr. Harison. Dr. Glaspie and Class Counsel take no position on the Harison Motion, other than noting that if the Court denies the opt-out request, the Court may be inclined to give Dr. Harison a reasonable minimal extension of time to make a claim under the Settlement, as she would be deemed to be a member of the Settlement Class and bound by the Settlement and, if approved, the Court's Final Approval Order.

[3] Along with this Motion for Final Approval, Dr. Glaspie and Class Counsel have filed their Motion for Determination on Attempted Objection of Dr. Hennessy Wilkerson (the "Wilkerson Motion") (D.E. 45), seeking the Court's determination of whether the attempted objection of Dr. Hennessy Wilkerson was valid,

Even if the Court does consider the merits of the objection of Dr. Hennessy Wilkerson, the sum and substance of the objection is that:

> After reviewing the proposed class action settlement, I wish to object to this settlement. The maximum payment does not cover the loss [sic] wages I incurred as a result of NABP's actions.

Exh. G to Exh. 1. However, "Courts routinely overrule similarly bare objections to settlements." *T.K. Through Leshore v. ByteDance Technology Co., Ltd.*, Case No. 19-cv-7915, 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) (citing, *e.g., Snyder v. Ocwen Loan Servicing, LLC*, No. 14 CV 8461, 2019 WL 2103379, at *9 (N.D. Ill. May 14, 2019)). Given that Dr. Wilkerson provided no substance—including the tier in which Dr. Wilkerson fell or the amount of lost compensation that Dr. Wilkerson felt that she was entitled to—the Court should overrule Dr. Wilkerson's objection. There were 615 Potential Class Members identified by the NABP. Of those, 432 made claims, for a take rate of **70.2%**—which is unheard of in claims-made settlements. Without anything more from Dr. Wilkerson, this Court can consider her threadbare objection against the overwhelming majority of the Class, which made claims under the Settlement and will receive substantial compensation as a result.

### J. Final Approval Order

Class Counsel intends to provide a Proposed Final Approval Order to the Court prior to the Final Approval Hearing—pending the Court's determination of the contemporaneous Harison Motion and Wilkerson Motion (D.E. 45)—but also believes it is prudent to incorporate the Court's ruling on Plaintiff's Unopposed Motion for Attorneys' Fees and Class Representation Award

---

as it was sent only to Angeion Group and lacked most of the substance required in the Court's Preliminary Approval Order. (D.E. 43.) The NABP agrees with Class Counsel that the attempted objection lacked most of the substance required in the Court's Preliminary Approval Order.

(D.E. 43) into the Proposed Final Approval Order if the ruling is entered prior to the Final Fairness Hearing.

The Preliminary Approval Order states that if the proposed settlement is approved, any Settlement Class Member who is not deemed by the Court as having submitted a valid Opt-Out Request complying with the Preliminary Approval Order requirements and the Class Notice shall be bound by the Settlement Agreement and all subsequent proceedings, orders, and judgments in this Action. (D.E. 37 ¶ 14.)

## MEMORANDUM OF LAW

### A. The Class Action Settlement Approval Process

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

(1) Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2) Dissemination of notice of the proposed settlement to the affected class members.

(3) A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63, *et seq.*

In granting preliminary approval of the Settlement and ordering that notice be disseminated to the Class, the Court has taken the first two steps in the process. (D.E. 37.) By this motion, Plaintiff respectfully requests that the Court take the third-and-final step in the settlement approval process by granting final approval of the proposed Settlement. The Settlement Class meets all of the elements of Rules 23(a) and 23(b)(3) for settlement purposes.

[2514103/6] 7

### B. The Parties Provided the Best Notice Practicable Under the Circumstances

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied. Federal Rule of Civil Procedure 23(c)(2) requires that notice to Settlement Class Members be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, even in Rule 23(b)(3) class actions, "due process does not require that every class member receive notice." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (citations omitted). Instead, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, the Notice Program, including the multiple avenues of notice and content of the Class Notice, satisfied Rule 23 and due process requirements. NABP provided Angeion with email addresses and mailing data to identify and send, via USPS First Class Mail, Notice Packages to the 615 potential Settlement Class Members. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Of those 615 potential Settlement Class Members, an overwhelming **70.2%** made claims under the Settlement.

Notice was further afforded through the Settlement Website, which included relevant important documents, online claims submission, FAQs, a schedule of important dates, the long-form notice, a toll-free number with an opportunity to speak to live operators, and a mailing address where Settlement Class Members could learn more and submit claims. Finally, the NABP also

provided notice to Settlement Class Members via its own email system which it uses to communicate with test candidates.

The Notice Package, the Settlement Website, and the NABP's additional notice gave Class Members all information reasonably necessary to make decisions whether to remain in the Settlement Class and be bound by the final judgment or opt out, and whether to object to any aspect of the Settlement Agreement. The Class Notice defines the Settlement Class; describes the allegations of the operative Complaint; informs Settlement Class Members of their right to opt-out and object, the procedures and deadlines for doing so, and the time and place of the Final Approval Hearing; informs Settlement Class Members of their rights to enter an appearance through their own counsel, if they desire; describes the attorneys' fees being sought by Class Counsel including the amount; tells Settlement Class Members how to submit a claim for Settlement Benefits and the deadline for doing so; notifies them that a final judgment would bind them unless they opt out; and tells Settlement Class Members how and where they can obtain more information including a toll-free number and the Settlement Website, which contain, inter alia, a full copy of the Settlement Agreement and Class Counsel's fee motion. The best practicable notice has been provided and due process is satisfied.

### C. The Settlement is Fair, Reasonable, and Adequate

Under Federal Rule of Civil Procedure 23(e), the Court should approve a proposed class action settlement upon finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Federal Rule of Civil Procedure 23(e) requires Court approval for any compromises of a class action. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Moreover, "[d]istrict courts have broad discretion to determine

whether certification of a class is appropriate." *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 741 (N.D. Ill. 2021) (citation omitted).

A court may approve a settlement that would bind class members only if, after proper notice and a public a hearing, the court determines that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). Under this Circuit's precedent, a district court must, in evaluating the fairness of a settlement, consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA)*, Inc., 463 F.3d 646, 653 (7th Cir. 2006) (citation omitted). "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* (quotations and citation omitted).

The Court has already granted the Settlement preliminary approval, finding it sufficiently reasonable to warrant notifying Settlement Class Members. (D.E. 37.) Nothing has changed that would alter this finding. Based on these factors, the Parties, through experienced counsel, respectively submit that the Court should finally approve the Parties' Settlement Agreement.

> i. *Potential of Class Members' recovery through continued litigation balanced against Settlement amount offered favors final approval.*

As noted above, "[t]he most important factor" in determining whether a proposed settlement satisfies Federal Rule of Civil Procedure 23 is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* (citations omitted). "But a settlement is a compromise, and courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to plaintiffs.'" *In re Capital One Tel.*

*Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (citing *In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 347 (N.D. Ill. 2010) (St. Eve, J.).

The proposed Settlement is reasonable, fair, and adequate because it provides substantive monetary relief to Settlement Class Members without requiring Settlement Class Members to risk the time, delay, and recovery inherently present in litigating a case to trial. *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 219 (N.D. Ill. 2019), aff'd sub nom. *Walker v. Nat'l Collegiate Athletic Ass'n*, 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (granting motion for final approval of class settlement because, among other factors, "By agreeing to the settlement, the settlement class eliminates the risks and expense associated with years of contentious litigation.") (citing Fed. R. Civ. P. 23). The Settlement Agreement provides significant financial relief to Class Members in the form of cash payments and will relieve the Parties of the burden of litigation. The Settlement value of the Settlement is $845,800.00.[4] The Settlement Agreement is particularly valuable to absent Class Members who, but for the Settlement Agreement, likely would be unaware of the existence of their individual legal claims. The alternative to bringing this case as a class action is for each of the 615 individual Class Members to bring claims against the NABP. Realistically, the alternative to a class action under the present circumstances is no action at all. While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, the Parties chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their

---

[4] The Settlement Agreement indicates a class fund totaling $831,800.00. (D.E. 35-1.) After the Preliminary Approval Order was entered by this Court (D.E. 37), the NABP reclassified Class Members, resulting in an increase of in the Class Fund of $14,000.00. On November 9, 2023, the Parties sought guidance from the Court regarding how to handle this increase. Thereafter, the Court entered an Order Approving Increase in Class Action Settlement Fund, and Granting Other Relief, which increased the class fund by $14,000.00 to a total of $845,800.00 (the "Class Fund"). (D.E. 42.)

efforts on achieving a fair and adequate Settlement Agreement that accounted for the risks of further litigation.

Settlement Class Members may claim and receive payment more readily and easily and for more benefit than if the Settlement had not been reached. The Settlement calls for a liberal and fair claims process that is streamlined, simple, and user-friendly. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 232 (N.D. Ill. 2016) ("The claim forms were straightforward, satisfied the Federal Judicial Center's guidelines, and required class members only to check a box and sign their names to file a claim."); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011) (rejecting contention that claims process was unnecessary and stating "the claims process is a negotiated facet of this settlement, which, as the Court explained above, is fair as a whole"). The Claim Form—which was negotiated and agreed to by the Parties as part of the Settlement Agreement—simply requires a Settlement Class Member to affirm Settlement Class membership and his or her identity, to sign the Claim Form and to deliver the Claim Form electronically via the Settlement Website or through the mail. (D.E. 35-3 at 3.)

In addition, the Class Notice and administration process are paid for entirely by the NABP under the Settlement Agreement, which otherwise would likely be paid by Plaintiff and later deducted from any recovery won for the class. (D.E. 35-1 ¶ 4.2.) Moreover, subject to Court approval, the NABP will pay Class Counsel's attorney's fees and costs of not more than $187,155.00, which were negotiated separately from Settlement Agreement. (D.E. 35-1 ¶ 6.1); (D.E. 43) (Plaintiff's Motion for Attorney's Fees). These benefits are exemplary and well within the range of what would be considered fair, reasonable, and adequate relief considering the risk of continued litigation, absent a class settlement.

In light of the NABP's potentially meritorious defenses and the legal uncertainty concerning the application of Illinois law to the issues at hand, Plaintiff would probably face an uphill battle proceeding to trial and, once there, obtaining relief. The Settlement provides value that is fair considering the very real possibility that Plaintiff may recover nothing if she were to proceed further with the litigation.

    *ii.    The likely complexity, length, and expense of litigation favors final approval.*

This case was far from certain when filed. If this case were to continue, litigation likely would take several more years to complete. During that time, Plaintiff would be required to contest a number of complex legal and factual issues. Moreover, there is a pending Partial Motion to Dismiss (D.E.s 15, 16) that would be heavily litigated and could even lead to a potential amended Complaint. Settlement is therefore in the best interest of the Settlement Class because it will avoid the risks and expenses associated with years of litigation with NABP. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. at 219. The Settlement Agreement avoids all the uncertainties and obstacles and any further delay owing to potential further litigation and appeals relating to liability or class certification.

    *iii.    The positive reaction to the Settlement favors final approval.*

The reaction to the Settlement Agreement has been overwhelmingly positive, which strongly supports final approval. At most, depending on the Court's determination of the attempted opt-out of Dr. Harison (the Harison Motion) and the attempted objection of Dr. Wilkerson (the Wilkerson Motion), there have been three opt outs and one attempted objection, for a sum total of four Class Members speaking against the Settlement (out of 615, Class Members). In contrast, there have been 432 claims submitted, for a take-rate of **70.2%**--almost unheard of in claims-made settlements.

> iv. *The opinion of Class Counsel favors final approval.*

Under *Synfuel*, the opinion of competent counsel is relevant to determining whether a class action settlement is fair, reasonable, and adequate under Rule 23. *Synfuel*, 463 F.3d at 653. Class Counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity as the present case. (D.E. 35-7.) Class Counsel believe that the Settlement Agreement is in the best interest of the Settlement Class. As such, this factor weighs in favor of final approval.

> v. *The stage of the proceedings and amount of discovery completed favor final approval.*

Lastly, although the Parties here have not engaged in discovery, this does not preclude the Court from approving the Settlement Agreement. *See Schulte*, 805 F. Supp. 2d at 587 ("That counsel conducted no formal discovery prior to settlement does not necessarily preclude eventual final approval of the proposed settlement."). The Parties have dedicated a significant amount of time and resources to this lawsuit. Moreover, Class Counsel conducted interviews with a number of putative Class Members and engaged in voluminous research regarding the relevant issues. All of the foregoing gave each side more than sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.

**D. There Was No Fraud or Collusion, and the Settlement Was Negotiated at Arm's Length**

The proposed Settlement is fair, reasonable, and adequate to compensate the Settlement Class Members for the NABP's actions in failing to properly score and report the NAPLEX. It was not the product of fraud, collusion, or overreaching by either of the Parties. Glaspie and her attorneys reached an agreement in principle with the NABP only after hard-fought negotiations. This was the product of a mediation before Harry Schafer, a highly skilled and experienced

mediator. The Parties did not negotiate the terms of any incentive award or attorneys' fees until after all material terms were agreed upon. Among experienced counsel from both sides, there were countless oral and written negotiations and several exchanges of versions of draft agreements, proposed orders, claims forms, proposed notices. The initial term sheet reached at the conclusion of the mediation was subsequently memorialized in the Settlement Agreement. (D.E. 35-1.) There was no fraud or collusion regarding the Settlement Agreement, and it was negotiated at arm's length. Therefore, the Settlement Agreement should be finally approved.

## CONCLUSION

WHEREFORE, considering the extensive substantial benefits of the proposed Settlement, the extensive Notice Program, the risks of the action proposed to be settled, the overwhelmingly positive reaction of the Settlement Class, and the legal standards detailed herein, the proposed Settlement terms are such that the Court can easily conclude that they are "fair, reasonable, and adequate." For the foregoing reasons, Class Representative respectfully requests that the Court grant final approval of the proposed Settlement.

## CERTIFICATE OF CONFERRAL

I hereby certify that I conferred with counsel for Defendant prior to filing this Motion. Counsel for the NABP indicated no opposition to the relief sought herein.

Dated: January 15, 2024         Respectfully submitted,

           **ZEBERSKY PAYNE SHAW LEWENZ, LLP**
           110 S.E. 6th Street, Suite 2900
           Ft. Lauderdale, Florida 33301
           Tel: (954) 989-6333
           Facsimile: (954) 989-7781
           jshaw@zpllp.com;
           zludens@zpllp.com;
           lpalen@zpllp.com

By */s/ Zachary D. Ludens*
    JORDAN A. SHAW (FBN 111771)
    ZACHARY D. LUDENS (FBN 111620)
    LAUREN N. PALEN (FBN 1038877)

**SORLING NORTHRUP**
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Tel: (217) 544-1144
Facsimile: (217) 522-3173
darolf@sorlinglaw.com

By */s/ David A. Rolf*
    DAVID A. ROLF, ESQ. (IBN 6196030)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, the foregoing was filed with the Court via the Court's CM/ECF system, which generated notices of electronic filing on all counsel of record.

                                                         */s/ Zachary D. Ludens*
                                                         Zachary D. Ludens